UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL ONYSZCSAK, et al

        Plaintiffs,

v.

WELLS FARGO BANK, N.A.,

        Defendant.
_____/

Case No. 13-12166
Hon. Lawrence P. Zatkoff

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on November 14, 2013

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendant Wells Fargo Bank, N.A.'s Motion for Summary Judgment/Dismissal [dkt 6]. The motion has been fully briefed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted, without oral argument. For the following reasons, Defendant's motion is GRANTED.

**II. BACKGROUND**

**A. FACTUAL BACKGROUND**

This is a case involving the foreclosure of real property located at 27565 Dowland Street in Warren, Michigan (the "Property"). Michael, Maria, and Jerry Onyszcsak (the "Plaintiffs")

claim that Wells Fargo Bank, N.A. ("Defendant"), through the law firm of Trott & Trott, P.C. ("Trott"), initiated improper foreclosure proceedings against the Property.

In September of 2005 Plaintiffs Michael and Marie Onyszczak received a loan in the amount of $80,000.00 from World Savings Bank, FSB ("World Savings Bank").[1]  At closing, Plaintiffs executed a note (the "Note") and, to secure repayment of the loan, granted a mortgage interest in the Property (the "Mortgage") to World Savings Bank.  Starting in January of 2012, Plaintiffs, Defendant, and Trott exchanged a series of correspondences regarding reinstatement of the Mortgage and the total amount outstanding on the Mortgage.  In these correspondences, Trott informed Plaintiffs that they would need to pay various charges—including a $13,470.10 "Corporate Advance" payment—in order to reinstate the loan.  Although Plaintiffs sent Defendant a certified check—for all fees minus the Corporate Advance—in response to this information, Defendant informed Plaintiffs they could not accept the funds "as they were received during the initiation of a foreclosure action and [were] not enough to reinstate the loan."  On January 25, 2012, Plaintiffs also sent a Fair Debt Dispute letter pursuant to the Real Estate Settlement Procedures Act ("RESPA"), seeking information regarding the ownership of the Mortgage.  Defendant alleges it properly responded on February 25, 2012, providing Plaintiffs with all the information they were entitled to.

In January of 2012, upon an alleged default, Defendant referred the mortgage to Trott for foreclosure proceedings.  Defendant asserts a Notice of Foreclosure was properly published and posted.  A sheriff's sale was scheduled and held on June 22, 2012.

---

[1] A central dispute in this case is the current ownership of Plaintiffs' Mortgage.  It appears undisputed that World Savings Bank was the original mortgagee.  Defendant claims the entity that was World Savings Bank—through mergers and name changes—is now an entity controlled by Defendant.  Plaintiffs deny this, alleging either improper assignment of their Mortgage or a broken chain of title between World Savings Bank and Defendant.

**B. PROCEDURAL BACKGROUND**

On February 1, 2013, Defendant filed an action for possession of the property in 37th State District Court in Warren, Michigan ("District Court"). On February 19, 2013, Plaintiffs filed a counter-complaint. On March 27, 2013, the District Court via stipulation and order severed the counter-complaint and removed it to Macomb County Circuit Court, staying the action in District Court until the counter-complaint was resolved. On May 3, 2013, the Macomb County Circuit Court gave Defendant official notice that Plaintiffs' counter-complaint was received for filing. On May 15, 2013, Defendant timely removed the matter to this Court on the basis of diversity jurisdiction.

In their complaint, Plaintiffs allege Defendant is not the owner of Plaintiffs' Mortgage and thus lacks standing to foreclose on the Property (Count I); that the Mortgage represents an adhesion contract (Count II); that Defendant violated a Consent Order between itself and the Office of the Comptroller of the Currency ("OCC") (Count III); and that Defendant lacks clean hands such that foreclosure should be unavailable (Count VI). On June 7, 2013, Defendant filed the instant motion.

### III. LEGAL STANDARD

**A. FED. R. CIV. P. 12(C)**

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The Court's review under Fed. R. Civ. P. 12(c) is the same as the review under Fed. R. Civ. P. 12(b)(6). *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008). Under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in the plaintiff's favor. *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577–78 (6th Cir. 1992). While this

standard is decidedly liberal, it requires more than a bare assertion of legal conclusions. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). Thus, the plaintiff must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level" so that the claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice." 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[2] (3d ed.2000). If, in deciding the motion, the Court considers matters outside the pleadings, the motion will be treated as one for summary judgment pursuant to Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(d).

### B. FED. R. CIV. P. 56

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325).

4

Once the moving party has met its burden of production, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

Defendant asserts that the Plaintiffs' complaint must be dismissed, as it fails to raise a genuine issue of material fact. Specifically, Defendant claims that:

(1) Defendant is both the owner of Plaintiffs' Mortgage and the servicer of Plaintiffs' Mortgage. Thus, the Defendant argues that the foreclosure process and the sheriff's deed are valid;
(2) The Mortgage is not a contract of adhesion;
(3) Plaintiffs have no private right of action to the enforce the OCC Consent Agreement; and
(4) Plaintiffs' claim for unclean hands does not allege a proper cause of action.

The Court will address each in turn.

### A. DEFECTIVE SHERIFF'S DEED - COUNT I

In Count I, Plaintiffs assert that the sheriff's sale of their Property on June 22, 2012, was illegally perpetrated. Specifically, Plaintiffs advance that, as Defendant is neither the original mortgagee of the Property nor the owner of the Mortgage, Defendant has no statutory authority to foreclose upon the Property. Defendant claims that—through name change and merger—it is

the owner of the Mortgage, that it has the right to foreclose on the Property, and that the Court must thus dismiss this claim for failing to raise a genuine issue of material fact.

Both parties agree that the original lender was World Savings Bank. Effective December 31, 2007, Defendant asserts that World Savings Bank changed its name to Wachovia Mortgage FSB ("Wachovia"). On November 1, 2009, Defendant asserts Wachovia merged with the Defendant. Defendant claims that the name change and merger do not represent any sort of assignment, transfer, sale or purchase of the Mortgage, and that Defendant is the owner of Plaintiffs' Mortgage. Plaintiffs do not seem to dispute these name changes, instead asserting that they believe discovery will show Defendant does not—and never did—own the Mortgage.

The Court, however, is not convinced. Plaintiffs' allegations that World Savings Bank "regularly" packaged and sold loans—and thus must have also done so here—is speculation void of any concrete facts. Such blanket assertions do not create the sort of specific facts upon which a genuine issue may be raised. While Plaintiffs advance that the opinion of an "expert" they consulted creates the sort of genuine issue of material fact needed for the claim to survive, the Court can find nothing in the expert's report that would suggest such a factual issue exists. Indeed, it appears to the Court that the expert offers several different plausible scenarios as to the fate of Plaintiffs' Mortgage, including the very one that Defendant advances: that it still remains with the original lender. As this affidavit and Plaintiffs' assertions are the only evidence provided by Plaintiffs to support their claim, the Court finds Plaintiffs have failed to meet their burden.

As such, the Court finds that Plaintiffs' count concerning ownership of the Mortgage and the ensuing validity of the sheriff's deed fails to raise a genuine issue of material fact and must be dismissed.

**B. ADHESION CONTRACT - COUNT II**

Plaintiffs argue that Defendant, in granting the Mortgage at issue, engaged in conduct that was deceptive and predatory. Plaintiffs contend that they were forced—after incurring substantial application fees—into a "take it or leave it" contract. This contract, Plaintiffs allege, was one Defendant knew or should have known that Plaintiffs were not qualified for, and resulted in Plaintiffs attaining a Mortgage they assert should be invalidated. Defendant claims the terms of the Mortgage are not unconscionable, as the Mortgage contains language no different than "millions" of mortgage contracts entered into by Defendant on a regular basis. Further, Defendant asserts that Michigan does not recognize a claim for "predatory lending," and that any applicable federal law claim is time-barred.

Under Michigan law, unambiguous contract terms are to be interpreted as reflecting the parties' intent and should be enforced as written. *See Quality Prod & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich 362, 375. Further, "[a]n 'adhesion contract' is simply that: a contract. It must be enforced according to its plain terms unless one of the traditional contract defenses applies." *Rory v. Continental Insurance Co.*, 473 Mich. 457, 477 (2005).

The Court finds Plaintiffs' arguments unconvincing. Although Plaintiffs allege they lacked the "sophistication" and the "education" to understand all of the documents contained in the Mortgage, this is not a valid defense in Michigan. *See McKinstry v. Valley Obstetrics-Gynecology Clinic, PC*, 428 Mich 167, 184 (1987). Further, the Court finds that Plaintiffs have provided no factual evidence that they were actually forced by Defendant to sign the Mortgage; a blanket statement that they incurred "substantial fees" does not satisfactorily indicate why Plaintiffs could not have simply walked away from the Mortgage. Finally, the Court finds that

Plaintiffs have not sufficiently pled fraudulent inducement, duress, or any of the other traditional contract defenses.

As such, the Court finds that Plaintiffs' adhesion contract claim fails to raise a genuine issue of material fact and must be dismissed.

### C. VIOLATION OF THE OCC CONSENT ORDER - COUNT III

Plaintiffs argue that Defendant violated a Consent Order between itself and the OCC by failing to base the foreclosure of Plaintiffs' Property on personal knowledge of an owner of the records pertaining to the Mortgage. Plaintiffs further assert that this Consent Order establishes a duty and standard of care for proper foreclosure procedures that Defendant failed to adhere to, and thus the foreclosure should be set aside. Defendants assert that, as the Consent Order does not contain a private right of action, Plaintiffs' reliance on the Consent Order is flawed and their count must be dismissed.

> Paragraph 10 on page 27 of the Consent Order reads:
>
> Nothing in the Stipulation and Consent or this Order, express or implied, shall give to any person or entity, other than the parties hereto, and their successors hereunder, any benefit or any legal or equitable right, remedy or claim under the Stipulation and Consent or this Order.

Further, the Stipulation and Consent Order—the Order signed by Defendant consenting to the OCC's issuing of the Consent Order—contains similar language. The Court finds that this language clearly establishes Plaintiffs have no right to enforce the Consent Order against Defendant. Further, Plaintiffs' apparently concede the merits of this issue in their response brief.

As such, the Court finds that Plaintiffs' claim concerning the OCC Consent Order fails to raise a genuine issue of material fact and must be dismissed.

8

**D. UNCLEAN HANDS - COUNT IV**

In Plaintiffs final count, they assert that the fraudulent and negligent actions of Defendant with regards to the creation of the Mortgage means that it lacks the clean hands required to obtain equitable relief. Defendant asserts it has complied with all applicable laws.

As the Court has dismissed all of Plaintiffs previous counts for failure to raise a genuine issue of material fact, the Court now finds that Plaintiffs have not presented the sort of facts regarding Defendant's alleged fraudulent or negligent conduct that are required to survive a motion for summary judgment. The Court thus finds that Plaintiffs' unclean hands count fails to raise a genuine issue of material fact and must be dismissed.

## V. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment/Dismissal [dkt 6] is GRANTED.

IT IS SO ORDERED.

Date: November 14, 2013            s/Lawrence P. Zatkoff
                                   HON. LAWRENCE P. ZATKOFF
                                   U.S. DISTRICT JUDGE